JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App. R. 11.1(E) and Loc. R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct. R.Rep.Op. 3(A).
In this landlord-tenant dispute, defendant-appellant Kali Elizabeth Yuga appeals the trial court's writ of restitution issued in favor of plaintiff-appellee Showe Management Corporation. We reverse.
For about ten years, Yuga has lived in the Metropole Apartments, which are subsidized public-housing units owned by Showe Management. Though Yuga has a month-to-month lease, recertification to verify eligibility for public housing is done annually, in July. In the recertification procedure, Showe Management submits to the tenant a form containing a calculation of the tenant's income and corresponding rent obligation, and the tenant signs and returns the form.
On February 17, 2003, Yuga wrote a letter to Mary Jane Brown, the manager of the Metropole Apartments. In the letter, Yuga explained that the Social Security Administration had made several errors and had incorrectly reported her income for the years 2001 and 2002. The errors caused Yuga's income to be overreported by $3,038. Yuga attached documentation from the Social Security Administration indicating the accurate amount of benefits received by Yuga in those years. In the letter, Yuga requested that Brown make the corresponding rent adjustment on the 2003 rental agreement "when it is due in May/June." Yuga claimed that Brown never responded to this letter.
On April 9, 2003, Yuga wrote another letter to Brown, reminding her that she had an appointment with another Showe representative on April 17, 2003, to discuss how her rent was calculated.
On April 17, 2003, according to Yuga's testimony, Yuga and Brown met and calculated Yuga's upcoming yearly income for recertification purposes to be $10,100. Yuga testified that she signed a "rent verification" form that set forth her annual income at $10,100.
On May 27, 2003, Showe Management sent Yuga her annual letter of recertification. It stated that her yearly income was $10,284 and indicated that she had five days to sign the recertification. It also stated that if she did not sign the form, "your lease agreement and federal regulations gives (sic) us the right to raise your rent to full market rent."
On June 3, 2003, Yuga wrote to Brown in response to the recertification form. Her letter informed Brown that the income figures on the recertification form were incorrect. Yuga reminded Brown that they had calculated the income together in their meeting on April 17, but that the amount reflected on the recertification form was wrong. Yuga wrote that she would "take as much time as I need to return said recertification to you so you can make the additional changes."
On June 16, 2003, Yuga again wrote to Brown, stating that the letter served as an "update regarding all information necessary for rent recertification." Among other items, Yuga noted that she had provided Brown with all the documentation concerning the errors in her reported income for 2001 and 2002, and that Brown had still failed to make the necessary adjustments to her rent. In addition, Yuga continued to dispute the calculated income for 2003. Yuga claimed that, in the April 17 meeting, she and Brown "went through the numbers together" and calculated her yearly income to be $10,100, but that the recertification form showed her income to be $10,284, a difference of $184.
On July 3, 2003, Yuga sent a letter to Brown indicating that she was beginning to put her rent money into escrow. Her explanation was that she continued to dispute the amount of her income reported on the recertification form and the corresponding rental payment amount. Yuga also referred to several instances where requests for maintenance service had gone unanswered.
On July 9, 2003, after Yuga had refused to submit her recertification form, Showe Management served Yuga with notice of a breach of her lease. It also moved to evict Yuga from the premises.
At a hearing before a magistrate in Hamilton County Municipal Court, Yuga admitted that she had refused to sign the recertification form. In her defense, Yuga stated that she had not signed the recertification form because she felt that it was incorrect.
The parties spent most of the hearing arguing about the $184 discrepancy in Yuga's 2003 reported income. The confusion apparently existed because Yuga received monthly social-security benefits of $811 from January 2003 through April 2003, but then received monthly benefits of $857 beginning in May 2003. Yuga calculated her "yearly" income from January through December 2003, while Showe Management calculated her "yearly" income from July 2003 through June 2004, resulting in the slightly larger amount.
The magistrate asked Brown how she would handle a situation in which a tenant believed that there was an error in the recertification calculations. Brown responded that if somebody disputed the calculations, she would investigate the problem with the person. She then stated that Yuga had not told her that the rent calculation was incorrect. Brown testified that Yuga had merely sent notice that she would not sign the recertification form. Yuga strenuously objected to this, stating that she had copies of her correspondence to Brown in which she had repeatedly discussed the problems with the rent calculations.
The magistrate found that Yuga's monthly income for the period in question was $857, and that Showe Management's calculation of Yuga's yearly income at $10,284 was correct. The magistrate then issued a writ of restitution in favor of Showe Management.
The issuance of the writ was reviewed by a judge of the municipal court at a hearing in September 2003. The parties again discussed the confusion over the $184 discrepancy. The judge determined that she needed to review the transcript of the earlier hearing before the magistrate and stated that she would issue a ruling after reviewing the transcript. A week later, the judge ordered the parties into mediation.
The mediation failed. Showe Management moved for a reissuance of the writ of restitution. In December 2003, the parties appeared before another judge of the municipal court, who, in a written opinion, found that "the lease in question" was in effect "from July 1 to July 1," and that Yuga had "refused to recertify her eligibility for subsidized housing as required by the terms of the lease between the parties." The judge found that Yuga had based her belief that the income calculations were incorrect on the flawed notion that the yearly calculations were for January through December. She then reissued the writ of restitution in favor of Showe Management, holding that Showe Management "shall have the premises."
Yuga now appeals to this court. In her first and second assignments of error, Yuga argues that the trial court erred when it granted the writ of restitution for Showe Management and again when it reissued the writ.
The trial court correctly found that Yuga was obligated to recertify each year in July to continue her eligibility for the subsidized housing. And it is undisputed that Yuga did not recertify. But it is also true that Yuga tried repeatedly to dispute the calculations on the recertification form and felt that she had never received an adequate explanation for the numbers that were on the form.
Brown testified that Yuga did not tell her the recertification calculations were incorrect, but that Yuga merely sent a letter saying that she would not sign the recertification. But the record contains copies of several letters in which Yuga detailed her disputes with the calculations and her reasons for her refusal to sign the recertification.
While the record may indicate that Yuga was on the wrong side of the argument over the $184 discrepancy, there was also the dispute over the $3,038 overstatement of her income in earlier years. In addition, we are troubled that when Yuga disputed the recertification calculations, sending letters and trying to meet with Showe Management, Showe Management simply ignored her, held her in breach of her contract, and then tried to evict her.
According to the HUD handbook, a tenant has ten days to contest disputed facts used in rent calculations, and an owner "must investigate and research discrepancies and possible errors."[1] Yuga's lease stated that a tenant could request to meet with the landlord to discuss any change in rent or assistance payments resulting from the recertification process. According to the lease, if a tenant requested such a meeting, the landlord had to agree to meet with the tenant and discuss how the tenant's rent and assistance payments, if any, were computed.
In addition, the HUD handbook section concerning evictions due to a failure to recertify states, "Eviction should be pursued only as a last measure for enforcing compliance. Prior to any eviction proceedings, owners must make every effort to contact the disabled and frail elderly to be sure the requirements of the recertification process are communicated in a manner that is comprehended by the tenant."[2]
We conclude that even though Yuga failed to sign her recertification form, she was entitled to some sort of explanation or accounting from Showe Management concerning both the $184 and the $3,038 discrepancies. Though Yuga cannot indefinitely extend her time at the subsidized rent without being recertified, she should be given the opportunity to present her documentation and her arguments supporting different recertification calculations.
Therefore, we sustain Yuga's first two assignments of error and reverse the judgment granting the writ of restitution. We remand this case to the trial court for a definitive calculation of the correct recertification numbers.
In Yuga's third assignment of error, she argues that the correct amount of monthly rent that she should have to deposit in the escrow account until this matter is resolved is $174, instead of the $189 ordered by the trial court. She claims that the $189 amount represented $174 in rent plus a $15 monthly charge for air conditioning that she was required to pay during the summer months only. In support of her argument, she cites the Metropole Apartments Community Policy, which states that a $15 air-conditioning fee must be paid only from May through September.
In response, Showe Management argues only that either amount falls far short of the market rent of the apartment.
The record shows that Yuga paid $189 into the escrow account at the beginning of July, August, and September of 2003. The municipal court judge, in her September entry, ordered Yuga to continue monthly payments of $189, "that being the defendant's portion of rent," until the matter was resolved. At the start of October, Yuga sent a letter to the Hamilton County Clerk of Courts and to the judge, explaining that she would be depositing only $174 into the escrow account because the summer air-conditioning fee was no longer owed. The record shows that, in October, November, and December 2003, Yuga deposited $174 into the escrow account for each month.
It is clear that the trial court intended the monthly escrow deposit to be the equivalent of Yuga's monthly rent. As far as we can tell from the record — and Showe Management has not argued otherwise — Yuga has paid what she has owed in rent into the escrow account each month. We conclude that Yuga should have to continue to pay only the amount of her monthly rent, $174, into escrow each month until this matter is resolved. Therefore, we sustain Yuga's third assignment of error.
Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings in accordance with law.
Further, a certified copy of this Judgment Entry shall be sent to the trial court under App. R. 27. Costs shall be taxed under App. R. 24.
Doan, P.J., Gorman and Painter, JJ.
[1] HUD Handbook, Document No. 4350.3, Section 8-17; see, also,Plains Plaza Ltd. v. McKinley (Dec. 4, 1991), 4th Dist. No. 1485.
[2] HUD Handbook, Document No. 4350.3, Section 7-7.